## WESTINGHOUSE ELECTRIC & MFG. CO. v. FORMICA INSULATING CO.

### (District Court, S. D. Ohio, W. D. July 3, 1920.)

### No. 175.

1. Patents ⊙⟹328—1,167,742 and 1,167,743, for noiseless gear, void for lack of invention.

   The Conrad patents, No. 1,167,742 and No. 1,167,743, for a noiseless gear, the material of which is a composition of bakelite and fiber, known as "Bakelite Micarta," of which Conrad was not the inventor, *held* void for lack of invention.

2. Patents ⊙⟹61—Prior application considered on question of invention.

   In determining whether a patent discloses invention, an application filed before that on which the patent was issued, but on which patent was not issued until later, may be considered.

3. Patents ⊙⟹21—Substitution of materials not necessarily invention.

   Substitution of one material for another, which does not involve change of method nor develop novelty of use, even though it may result in a superior article, is not necessarily invention.

In Equity. Suit by the Westinghouse Electric & Manufacturing Company, against the Formica Insulating Company. Decree for defendant.

Kerr, Page, Cooper & Hayward, of New York City, and Allen & Allen, of Cincinnati, Ohio, for plaintiff.

Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., and Gifford & Bull, of New York City, for defendant.

PECK, District Judge. By the bill complainant seeks to enjoin defendant from the manufacture and sale of blanks to be used in the making of gear wheels, composed of a fibrous material with a phenolic condensation product for a binder, which complainant alleges to be a contributory infringement of the Conrad patent, No. 1,167,742, of January 11, 1916; also of a supplementary patent to the same patentee of the same date, No. 1,167,743. Complainant elects to stand upon claims 3, 7, 8, and 14 of the former and claim 3 of the latter.

The defense asserted is that the said patent (it is necessary only to speak of the former) is void for want of invention, or, if showing invention, then because Conrad was not in fact the first inventor, and for want of novelty.

[1] The subject-matter of the patent is the nonmetallic or "noiseless" gear. The inventor stated his object to be the production of a gear wheel which would be light, strong, durable, infusible, and impervious to moisture and to most chemicals. To obtain this result sheets of fibrous material, such as cloth or paper, are impregnated with an adhesive liquid material, preferably a phenolic condensation product, such as bakelite, dried in an oven, laid together with the treated side of one to the untreated side of the next, hydraulically pressed under heat until the material is fully impregnated and firmly cemented into a hard, compact mass, and, after cooling, subjected to a baking process.

---

The result claimed and actually obtained by this process is a laminated fibrous material, capable of withstanding great heat, of high tensile strength, which can be turned and bored in the same manner as wood. The finished plates are then cut into gears in the usual way.

As a modification the patentee showed and described metallic end plates or shrouds on his gears, to protect the edges of the composite structure from injury and to give added strength. The binding material, bakelite, is described as a condensation product of phenols and formaldehyde. Claim 7, which is typical of those relied on, is:

"A gear having a self-sustaining working body portion, composed of fibrous material and a phenolic condensation product."

The complainant has, by the means described, produced a gear which is not only highly useful and commercially successful, but also superior in some adaptations to all preceding types of noiseless gears. How much of this result can be attributed to the exercise of the inventive faculty by Conrad?

The new element that made this success possible was a composition of bakelite and fiber, together known as "Bakelite Micarta." It is not claimed that this material was Conrad's production. Admittedly it was that of Dr. L. H. Baekeland. It was described as a packing material in the latter's patent of November 30, 1909, No. 941,605. The same process of building up the laminated material described in Conrad's patent is fully set forth by Dr. Baekeland in his composite cardboard patent of March 5, 1912, No. 1,019,406. Upon December 16, 1910, Dr. Baekeland filed his application for a patent on a "machine element," meaning thereby gears, pulleys, and the like.

[2] This application, filed 2½ years before that of Conrad, although not allowed until after Conrad's application had been filed, may be considered in determining the question, raised by the answer, whether the patentee was the first inventor. Lemley v. Dobson-Evans Co., 243 Fed. 391, 156 C. C. A. 171. As an illustrative example of this invention, Baekeland described a gear made of a phenolic condensation product, either compounded—that is to say, mixed—with fiber, or built up with layers of wood, cardboard, paper, or similar porous material, and compressed between metal plates. This was to be done either with or without the use of interior metal strengthening plates. The gears were then to be cut from discs of the material so formed. He described such gears as capable of withstanding comparatively high temperature and of enduring conditions destructive to most plastic compositions, as being of great hardness, toughness, and wearing qualities, and, as against metal gears, silent in operation. The difference between the two patents is that in Baekeland the reinforcing plates are considered essential to the strength of the gear, while in Conrad they were considered optional with the gear maker.

Dr. Baekeland, therefore, conceived the use of the phenol condensation compound as a gear-making material, but not without reinforcement. Conrad knew the material as suitable for gears without, as well as with, reinforcement. Baekeland's material was bakelite, fiber, and metal; Conrad's, bakelite and fiber, with or without metal, as condi-

tions might warrant. Conrad's advance upon Baekeland was his recognition that under some conditions, at least, the supporting metallic plates might be omitted.

Therefore it cannot be said, broadly speaking, that Conrad was the first inventor of the use of a fibrous material, bound by a phenolic condensation product, in the art of gear making. The most that can be claimed for him is the originating of gears of the material described, without necessarily depending upon the use of shrouds or end plates or other metallic strengthening members. Assuming this contention to be true, did it involve invention in a patentable sense?

Bakelite Micarta was then in use principally as an electric insulating material. It was at the same time known to be a hard, fibrous substance, strong, insoluble, infusible, and resistant to water, oil, and most chemicals. At the same period noiseless gears of rawhide, compressed fiber, or fabroil, and vulcanized or hard fiber, were common. The rawhide and fabroil gears were held in shape by end plates, between which they were compressed. Hard fiber, on the other hand, was a self-sustaining material. It was composed of cotton rag paper treated with chloride of zinc, which rendered it gelatinous and adhesive. The layers of material, having been so treated, were pressed together and formed a laminated, fibrous, self-sustaining, hard material, useful for gear making. The resemblance of the new material, Bakelite Micarta, to the well-known hard fiber was obvious and striking. It was, in truth, also a hard fiber. Both depended upon the fiber for their strength. The difference was that the Micarta contained a new and better binding cement, and the process of its manufacture was not injurious to the fiber and left it unimpaired. But, after all, was it anything more than an improved hard fiber? And if hard fiber had for years been familiarly utilized for the manufacture of noiseless gears, was it patentable invention for Conrad to employ the greatly improved hard fiber, not itself his invention, for the same purpose? The old hard fiber gears had been used with and without end plates or shrouds. Conrad had sufficient confidence in the new material to describe a gear made of it without such supports, but not sufficient confidence in it to discard them altogether, and described them as an alternative. In his claims he is careful to limit the use of the material to the "working body portion," thus covering a gear supported by shrouds or end plates; they not being the "working body portion" thereof. Conrad's effort must be considered to have been the skillful selection of material rather than invention. Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683. Mere superiority of product will not suffice. Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852; Burt v. Evory, 133 U. S. 349, 358, 10 Sup. Ct. 394, 33 L. Ed. 647; Capital Sheet-Metal Co. v. Kinnear & Gager Co., 87 Fed. 333, 31 C. C. A. 3.

The bakelite gear was held to be an infringement of the compressed fiber or fabroil gear in General Electric Co. v. Continental Fiber Co., 256 Fed. 660, 168 C. C. A. 54. It was there held that the Miller patent for the use of compressed textile fabrics for gear manufacturing was fundamentally new and entitled to a broad range of equivalents.

Its infringement by the bakelite gear was placed upon the ground that both depend upon the presence of a large number of fibers in a small space.

This case is to be distinguished from Westmoreland Specialty Co. v. Hogan, 167 Fed. 327, 93 C. C. A. 31, which affords example of patentable invention in the substitution of a new material, because the celluloid top of the salt dredge there patented performed an entirely new function, viz., the insulating of the salt in the dredge from the moisture in the atmosphere. Nor does this case seem to be within the principle of Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952. No new function is performed by Conrad's gear.

[3] Its superiority lies in its general excellence. Substitution of one material for another, which does not involve change of method nor develop novelty of use, even though it may result in a superior article, is not necessarily a patentable invention. Florsheim v. Schilling, 137 U. S. 64, 11 Sup. Ct. 20, 34 L. Ed. 574.

The case of General Electric Co. v. Nitro-Tungsten Lamp Co. (C. C. A.) 266 Fed. 994, very recently decided by the Court of Appeals of the Second Circuit, relied on by complainant, relates to an electric lamp bulb filled with dry nitrogen, and the inventive step seems to have been the use of a filament of tungsten of large effective diameter to secure a result not theretofore attained. Although the materials were old, their successful arrangement appears to have real creative invention. The patent was held valid; but this does not seem in conflict with the conclusion here reached.

The court, therefore, finds that neither of the Conrad patents hereinbefore referred to show patentable invention, and that, for want thereof, the same are void.

The bill, therefore, will be dismissed.